UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Brian Beaton

    v.                                                         Civil No. 10-cv-343-JD
                                                            Opinion No. 2011 DNH 046

Michael J. Astrue


O R D E R

Brian Beaton seeks judicial review, pursuant to 28 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security disability benefits and supplemental security income. Beaton contends that the Administrative Law Judge ("ALJ") erred at Step Three in failing to find that his impairments met a listed impairment, erred in assessing his credibility, and improperly determined at Step Five that he could work. The Commissioner moves to affirm the decision.


Background

Brian Beaton filed an application for social security benefits in May of 2008, when he was forty-three years old. He is a high-school graduate with past work history as a carpet installer and a painter. In his application, Beaton alleged a disability due to severe pain and swelling, an inability to walk

effectively, constant pain in both ankles, and severe pain in his wrists, hands, arms, knees, and feet.  Beaton also listed impairments due to arthritis, gout, anxiety, and depression.

From 1999 through 2006, Beaton was treated for pain and gout in his knees, ankles, and wrists.  He also was diagnosed with a mood disorder on December 2, 2003.  On November 17, 2006, Beaton was treated at Dartmouth Hitchcock Medical Center for "multijoint arthropathy of unclear etiology."  The medical notes summarize Beaton's history of joint pain and loss of employment due to absences caused by pain.  The conclusion was that Beaton likely had psoriatic arthritis.  Medical notes in 2008 document pain and swelling but normal laboratory testing results.

On September 29, 2008, Beaton was treated at the Dartmouth Hitchcock Clinic for anxiety and depression.  The physical examination resulted in normal findings.  Although Beaton's mood was dysthymic, depressed, and anxious, his cognitive functioning, mental status, thought process, and thought content were normal.

On October 14, 2008, Beaton met with a social worker, Judy Houghton, LICSW.  He explained that although he was walking better, he had not gone back to work and that he had quit his previous job and then returned several times.  He told Houghton about issues he had had as foreman with the owner's grandson and said that he was uncertain about returning to that job because

"the aggravation is awful." Houghton assessed Beaton as being in early remission of alcoholism and having an anxiety disorder.

Beaton underwent a disability examination with Dr. John Fothergill on December 9, 2008. Beaton reported his history of gout and pain in his knees, left elbow, lower back, hands, and wrists when he worked. On examination, Dr. Fothergill found no objective signs of abnormality. Dr. Fothergill assessed psoriasis, arthritis, and gout and noted that Beaton appeared to have an inflammatory type of arthritis which was aggravated by his work. Dr. Fothergill noted that Beaton had not been able to afford the treatment suggested by rheumatology and that further information was needed about his condition. Dr. Fothergill also said that Beaton could do activities such as sitting, standing, walking, lifting, carrying, and bending on a short term basis without a lot of weight or strain. Dr. Fothergill suggested that Beaton should have vocational rehabilitation to work that would be less traumatic for his feet and other joints. On a "Determination of Incapacity Status" form for the New Hampshire Department of Health and Human Services, Dr. Fothergill found that Beaton was incapacitated by arthritis.

On December 15, 2008, Virginia Rockhill, Ph.D., completed a "Comprehensive Psychological Profile" for Beaton. She found that Beaton's intellectual functioning was in the low average range

and recounted his reports of moderate irritability and mild sadness, crying, suicidal thoughts, hopelessness, and helplessness. She noted that Beaton had extreme symptoms of decreased sleep and loss of interest. She assessed a moderate level of restriction in his daily activities overall. Dr. Rockhill found that Beaton was able to follow simple directions but would avoid complex tasks due to concentration and short term memory issues. She also reported that he had difficulty in making decisions and in maintaining a work schedule.

Dr. Jonathan Jaffe, a state agency consulting physician, reviewed Beaton's medical records and completed a "Physical Residual Functional Capacity" form on January 5, 2009. Dr. Jaffe found that Beaton could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; could stand, walk, or sit for six hours in an eight-hour day; and could occasionally do postural activities such as bending and climbing. Dr. Jaffe also found Beaton's allegations of pain to be credible but noted that despite the pain, he was able to function at a reduced exertional level.

On January 9, 2009, Michael Schneider, Psy.D., completed a "Psychiatric Review Technique" assessment, covering the period between February 1, 2008, through the date of the review. In the affective disorders section of the form, Dr. Schneider checked

the box for "A medically determinable impairment is present that does not precisely satisfy the criteria above." On the following line, which asked for the name of the disorder, Dr. Schneider wrote "MDD" without explanation. Following that, when asked for the pertinent symptoms, signs, and laboratory findings, Dr. Schneider referred generally to Dr. Rockhill's notes and also noted Dr. Rockhill's diagnosis of Generalized Anxiety Disorder and Major Depression. Dr. Schneider wrote that although Beaton had a severe impairment, he retained the ability to understand, remember, and carry out short and simple instructions; to maintain adequate attention for those tasks; and to complete a normal work week in an environment that was not overly critical. He concluded that Beaton had a moderate degree of limitation in his daily living activities, in maintaining social functioning, and in maintaining concentration, persistence, and pace.

On March 17, 2009, Judy Houghton, LICSW, who had seen Beaton in October of 2008, completed a "Mental Residual Functional Capacity Assessment." She found that Beaton was markedly limited in eleven of the listed areas, including the ability to remember locations and work procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination or proximity with others without

being distracted; the ability to interact appropriately with the general public; and the ability to complete a normal workday without interruptions from psychologically based symptoms.

The next day, March 18, 2009, Dr. Fothergill completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" form. Dr. Fothergill stated that Beaton would require written directions, would "get stressed out" by trying to complete tasks, and did not work well with others. Dr. Fothergill indicated on the form that Beaton's abilities to deal with the public, follow work rules, and interact with supervisors were good and that his abilities to relate to co-workers, use judgment, deal with work stress, function independently, and maintain attention and concentration were fair.

Dr. Fothergill completed a "Physical Residual Functional Capacity Assessment" form on March 30, 2009. He stated that Beaton could lift ten pounds, could stand or walk with normal breaks for a total of less than two hours during an eight-hour work day, that he would need to alternate sitting and standing to relieve pain or discomfort, and that he was limited in use of his arms and legs. His hearing was limited; his ability to handle objects was limited; and he had environmental limitations.

Beaton continued to treat with Dr. Fothergill through 2009. Dr. Fothergill noted that activity brought on pain for Beaton and

that he had psoriasis, arthritis, gout, and alcohol abuse. In August of 2009, Dr. Fothergill noted improvement in pain and energy. In November of 2009, Dr. Fothergill stated that he was "excited" that Beaton was able to work and cautioned him to use the "slow and steady model" in approaching work.

A video-conference hearing before an ALJ was held on February 9, 2010. Beaton was represented by an attorney during the hearing. Beaton testified that he drove his wife to work every day, did some household chores although washing dishes caused his hands to cramp and caused pain in his ankles, feet, and lower back. He said that he did not do grocery shopping because he sometimes just did not want to be around people. He also said that he sometimes forgot to take his medications and that his wife reminded him.

The ALJ issued his decision on March 5, 2010. He found that Beaton had a severe combination of impairments caused by inflammatory arthropathia and major depressive disorder. The ALJ concluded that the impairments did not meet or equal a listed impairment. He found that Beaton retained the residual functional capacity to do sedentary work, except that he could only occasionally perform postural activities, was limited to simple tasks, and could not tolerate overly critical supervision. The ALJ concluded that Beaton could not return to his former work

but that under the Medical-Vocational Guidelines, work existed that he could do.

The ALJ's decision became the final decision of the Commissioner on June 8, 2010, when the Decision Review Board was unable to complete review within the time allowed.  The decision is subject to judicial review.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. § 404.1520. The applicant bears the burden, through the first four steps, of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the burden shifts to the Commissioner to show that work that the claimant can do, despite her impairments, exists in significant numbers in the national economy. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

Beaton moves to reverse the Commissioner's decision on the grounds that the ALJ erred in finding that he did not have a combination of impairments that met a listed impairment, that the ALJ did not properly assess his residual functional capacity, that the ALJ did not properly assess Beaton's credibility, and that the ALJ's decision based on the Medical-Vocational Guidelines lacks substantial evidence. The Commissioner moves to affirm.

A.  <u>Listed Impairment</u>

At Step Three of the sequential analysis, the ALJ determines whether the claimant has an impairment or a combination of impairments that meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d), § 404.1525; § 404.1526.  The claimant bears the burden of demonstrating that his impairment or impairments meet or equal a listed impairment.  <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 745 (1st Cir. 1989).

Beaton contends that his mental impairment meets Listing 12.04.  Listing 12.04 pertains to "Affective Disorders."  To meet Listing 12.04, a claimant must show that he meets the requirements of Parts A and B or C.  The ALJ determined that the Part B requirements were not met.  Part B requires a claimant to prove that he has at least two of the four listed criteria:

> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of decompensation, each of extended duration.

In his decision, the ALJ distinguished between residual functional capacity assessments, used at Steps Four and Five of the sequential analysis, and the limitations in Part B, which

assess the severity of mental impairments. Without citing any specific evidence in support, the ALJ found that Beaton had mild restrictions in his activities of daily living and in maintaining concentration, persistence, or pace and moderate restrictions in his social functioning. In the absence of any marked restrictions, the ALJ concluded that Beaton had not shown that he met the requirements of Part B.

Beaton contends that Judy Houghton's "Mental Residual Functional Capacity Assessment" shows that he has marked restrictions in "the 'understanding and memory' category," "the 'sustained concentration and persistence' category," and "the 'social interaction' category." The categories Beaton cites do not directly correlate with the requirements in Part B. A review of Ms. Houghton's findings shows that the restrictions she found also do not directly correlate with the requirements of Part B. Beaton makes no effort to explain the discrepancy. Beaton also did not address the ALJ's distinction between residual functional assessments, as done by Ms. Houghton, and the evaluation required under Part B. Therefore, Beaton has not carried his burden of showing that he met the requirements of Part B.

B.  <u>Residual Functional Capacity</u>

"[Residual functional capacity ("RFC")] is what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's <u>maximum</u> remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); 20 C.F.R. § 404.1545.  In assessing a claimant's residual functional capacity, the ALJ must consider "all the relevant medical and other evidence in [the claimant's] case record."  § 404.1520(e).  The ALJ cannot ignore medical evidence, substitute his judgment for that of medical professionals, or improperly discount the opinion of a treating physician.  <u>Nguyen</u>, 173 F.3d at 33.

Beaton contends that the ALJ did not consider or assess properly all of the medical evidence that pertained to his residual functional capacity.  Although Beaton cites additional medical data to support his claims, the ALJ considered the evidence and came to a different conclusion.  The ALJ also relied on the medical opinions that interpreted the medical data. Beaton has not shown that approach to be in error.

Beaton faults the ALJ for failing to discuss Ms. Houghton's findings and Dr. Rockhill's evaluation and for mistakenly

12

attributing Ms. Houghton's findings to Dr. Fothergill. The Commissioner acknowledges that the ALJ mistakenly attributed Ms. Houghton's findings to Dr. Fothergill, but notes that despite the incorrect attribution, the ALJ properly considered and rejected the findings because they were inconsistent with Beaton's medical records.[1]

The ALJ reviewed the medical evidence that showed a greater residual functional capacity than Dr. Fothergill found in his assessment. The ALJ also noted that the opinions of Dr. Jaffe and Dr. Schneider were more consistent with the objective medical evidence than Dr. Fothergill's opinion. See § 404.1527(d)(2). Although the ALJ's analysis and explanation are more cursory than would be expected, the decision meets the minimum requirements under the applicable regulations.

Beaton faults the ALJ for failing to consider Dr. Rockhill's evaluation. He does not explain what difference her opinions would have made in the context of the ALJ's decision. Also, as

---

[1] The court also notes that as a licensed social worker, Ms. Houghton was not an acceptable medical source, under the applicable regulations, and therefore was not competent to provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a). Evidence from other sources, however, may be considered to show the severity of an impairment and how it affects the claimant's ability to work. § 404.1513(d). By attributing Ms. Houghton's opinions to Dr. Fothergill, the ALJ gave them the potential for greater influence in his decision.

the Commissioner points out, Dr. Schneider incorporated Dr. Rockhill's evaluation into his assessment, and the ALJ expressly relied on Dr. Schneider's opinion.

Contrary to Beaton's arguments, the ALJ appropriately considered Dr. Jaffe's and Dr. Schneider's opinions. If an ALJ finds that a treating physician's opinion is inconsistent with the record evidence, including opinions by non-treating sources, the ALJ can reject the treating source opinion and rely on a non-treating source. See Partridge v. Astrue, --- F. Supp. 2d ---, 2010 WL 4882018, at *5 (D. Mass. Dec. 1, 2010); Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002). Because the ALJ concluded that Dr. Fothergill's opinion was not consistent with the record, he properly discounted that opinion in favor of the non-treating source opinions.

C. Credibility

Beaton contends that the ALJ erred in finding that Beaton's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely credible. In particular, Beaton points to Dr. Jaffe's note that Beaton's allegation of pain was credible. Beaton argues that the ALJ cannot accept Dr. Jaffe's opinion with respect to Beaton's residual functional

capacity but reject the opinion as to the credibility of Beaton's complaints of pain.

The ALJ stated that Beaton's statements about the limiting effects of his pain were not entirely credible because they were not supported by the objective medical evidence. The ALJ then explained what medical evidence was contrary to Beaton's complaints. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.3d 192, 195 (1st Cir. 1987).

Beaton cites no support for his assertion that the ALJ cannot ignore Dr. Jaffe's opinion about his credibility. Because Beaton's theory is not sufficiently developed, the court will not pursue it further.

D.  Medical-Vocational Guidelines

At Step Five of the sequential analysis, the Commissioner bears the burden of showing that there are jobs that the claimant can do despite his impairments. Seavey, 276 F.3d at 5. The Commissioner can satisfy the burden at Step Five by the use of a chart, the Medical-Vocational Guidelines ("Grid"), when the

claimant's limitations are exclusively exertional.  <u>Id.</u>  When a claimant also has non-exertional limitations, however, the Grid may only provide a framework for the decision and is applicable only when the non-exertional limitations do not significantly restrict the claimant's ability to do work at the designated exertional level.  <u>Id.</u> at 6-7; <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 996 (1st Cir. 1991).

In this case, the ALJ found that Beaton could do work at the sedentary level with the added restrictions that he could only occasionally do postural activities, could only do simple tasks, and could not tolerate overly critical supervision.  With those criteria in mind, the ALJ concluded that the Grid, at Rule 201.25, supported a finding of not disabled.  Beaton contends that the ALJ's reliance on the Grid was improper because his allegations of his symptoms and Dr. Fothergill's assessment showed that he could not do a full range of sedentary work and that the occupational base, assumed by the Grid, was eroded by his limitations.

As is discussed above, the ALJ's residual functional capacity assessment complies with applicable legal standards and is supported by substantial evidence.  Therefore, Beaton's arguments that the assessment should have included additional limitations are without merit.

The limitations accorded by the ALJ, for only occasional postural activities, simple tasks, and no overly critical supervision, do not significantly erode the occupational base. The Grid provides administrative notice of only unskilled jobs, which includes the limitation for simple tasks.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 526 (1st Cir. 1989).  A limitation for occasional postural activities also leaves the occupational base for sedentary work substantially intact.  See SSR 85-15, 1985 WL 56857, at *7.  The Commissioner points out that other courts have concluded that limitations to avoid stress and criticism do not preclude use of the Grid.  See Wild v. Chater, 1996 WL 560104, at *4 (9th Cir. Oct. 1, 1996) (unpublished); Conrad v. Astrue, 2009 WL 1948831, at *3 (N.D. Cal. July 2, 2009); Dollins v. Astrue, 2008 WL 4402208, *5 (E.D. Ky. Sept. 24, 2008); cf. Gurney v. Astrue, 2010 WL 323912, at *3-*4 (D. Me. Jan. 20, 2010) (restriction to limited interaction with supervisors and co-workers precluded reliance on the Grid).

Whether the ALJ correctly relied on the Grid in this case is a close question.  Beaton's limitation was to avoid "overly critical supervision," rather than a restriction from stress, supervision, or criticism generally.  Therefore, the court accepts the ALJ's determination that the limitation would not

substantially erode the occupational base in this case. Although the ALJ's determination was only minimally sufficient, see, e.g., Sweeney v. Astrue, 2010 WL 5559134, at *2-*3 (N.D. Ohio Dec. 8, 2010); Gurney, 2010 323912, at *3-*4; Byrd v. Astrue, 2010 WL 551391, at 86 (S.D. Ala. Feb. 10, 2010), it is affirmed.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 6) is denied. The Commissioner's motion to affirm (document no. 8) is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                          /s/ Joseph A. DiClerico, Jr.
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

March 23, 2011

cc: Christine Woodman Casa, Esquire
     Gretchen Leah Witt, Esquire